IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ALL PRO BRACE, LLC,** | **CASE NO. 1:21-CV-00896-PAB** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,** *Secretary Xavier Becerra, in his official capacity, et al.*, | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

Currently pending is a Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) filed by Defendants Xavier Becerra, Secretary, United States Department of Health and Human Services, Chaquita Brooks-LaSure, Administrator, Centers for Medicare and Medicaid Services, and Palmetto GBA (collectively, the "Federal Defendants"). (Doc. No. 36.) Plaintiff All Pro Brace, LLC filed an Opposition on March 24, 2022, to which the Federal Defendants replied on April 21, 2022. (Doc. Nos. 38, 41.) For the following reasons, the Federal Defendants' Motion is GRANTED.

**I.     Background**

    **A.     Factual Allegations**

All Pro Brace is a distributor and seller of medical grade braces, supports, and other accessories, whose principal place of business is in North Ridgeville, Ohio. (Doc. No. 1, ¶ 2.) In September 2019, All Pro Brace submitted three competitive bids to be a Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") supplier with the Centers for Medicare and Medicaid ("CMS") in three Northeast Ohio territories. (*Id.* at ¶ 10.) CMS provides health coverage

for qualified individuals via Medicare and Medicaid. (*Id.* at ¶ 4.) The Secretary of the Department of Health and Human Services administers the Social Security Act and oversees the Medicaid Program. (*Id.* at ¶ 3.)

In conjunction with its bids, All Pro Brace procured three separate surety bonds, each worth $50,000. (*Id.* at ¶ 11.) All three bonds named CMS as the obligee and contained identical language providing that the bonds are null and void if All Pro Brace was not offered a contract by CMS. (*Id.* at ¶¶ 11, 12.) All Pro Brace submitted its bids through an online portal administered by Palmetto GBA, a CMS contractor. (*Id.* at ¶ 6.) Palmetto contracts with CMS to administer the DMEPOS Competitive Bidding Program and is responsible "for conducting bid evaluations, selecting qualified suppliers, [and] setting payments for competitive bidding errors, among other responsibilities." (*Id.* at ¶¶ 6, 7.)

All Pro Brace alleges that on November 22, 2019, "before a contract was offered by CMS," All Pro Brace's "PTAN" number was suspended by CMS after CMS initiated an investigation into All Pro Brace through the Office of the Inspector General. (*Id.* at ¶ 13.) A PTAN "is a Medicare-only number issued to providers by Medicare Administrative Contracts (MACs) upon enrollment to Medicare." (*Id.* at n.1.) "MACs issue an approval/notification letter, including PTAN information, when an enrollment is approved." (*Id.*) A provider needs a PTAN to access the CMS portal where bids are submitted. (*Id.* at ¶ 14.) All Pro Brace alleges that when its PTAN was suspended, it "had no access to the CMS Portal." (*Id.*) As a result, All Pro Brace alleges that it was prevented from checking the status of or withdrawing its bids "after CMS's unilateral suspension." (*Id.*)

Approximately one year later, on November 20, 2020, "while All Pro Brace was suspended and with no access to the CMS system," All Pro Brace alleges that CMS offered it three contracts

based on its 2019 bids. (*Id.* at ¶ 15.) However, All Pro Brace alleges that it was unaware of these offers because it remained "locked out of the portal." (*Id.*)

All Pro Brace alleges that on February 2, 2021, Palmetto issued correspondence on CMS's behalf to Merchants Bonding Company, the company that provided All Pro Brace's surety bonds. (*Id.* at ¶¶ 7, 16.) Palmetto claimed that All Pro Brace's surety bonds were subject to forfeiture under 42 C.F.R. § 414.412(g)(3)(i) because All Pro Brace failed to timely accept the offered contracts. (*Id.*) Palmetto demanded that Merchants Bonding Company forfeit the surety bonds within 30 days. (*Id.*) All Pro Brace alleges that Palmetto's February 2, 2021 correspondence was the first notice it received that CMS had allegedly accepted All Pro Brace's bids. (*Id.* at ¶ 17.) All Pro Brace subsequently demanded that CMS withdraw its demand for the bond forfeitures, but that it has yet to do so. (*Id.* at ¶ 18.) All Pro Brace alleges that it still has no access to the CMS Portal. (*Id.* at ¶ 19.)

### B. Procedural Background

All Pro Brace filed the instant Complaint for Declaratory Judgment on April 29, 2021. (Doc. No. 1.) In addition to the Federal Defendants, All Pro Brace also named Merchants Bonding Company as a defendant. (*Id.* at ¶¶ 3-7.)

All Pro Brace brings two counts against all defendants, each in the alternative to the other. (*Id.* at ¶¶ 20-34.) Count 1 is captioned "DECLARATORY JUDGMENT CMS cannot rely upon 42 CFR § 414.412(g)(3)(i) to seek bond forfeiture." (*Id.*) Therein, All Pro Brace alleges that forfeiture of a bid surety bond only happens after "the failure to accept a contract offer" under § 414.412(g)(3)(i). (*Id.* at ¶ 22.) All Pro Brace alleges that CMS never made a valid offer to All Pro Brace that would trigger forfeiture under the relevant regulation. (*Id.* at ¶ 24.) Therefore, according to All Pro Brace, it is entitled to a declaration that its surety bonds are not forfeited pursuant to the

3

regulation, and, further, a declaration that Palmetto and Merchants Bonding Company are bound by this Court's decision. (*Id.* at ¶¶ 26, 27.)

Count 2 is captioned "DECLARATORY JUDGMENT All Pro Brace's performance was excused by a legal impossibility created by CMS." (*Id.* at ¶¶ 28-34.) Therein, All Pro Brace alleges that, assuming, in the alternative, a valid contract between CMS and All Pro Brace existed, "it was impossible for All Pro Brace to perform." (*Id.* at ¶ 29.) All Pro Brace alleges that after it submitted its three bids, "an unforeseen event arose in the form of CMS's investigation and suspension of All Pro Brace." (*Id.* at ¶ 30.) All Pro Brace alleges that CMS's unilateral suspension made it impossible for All Pro Brace to know that CMS offered it any contracts. (*Id.* at ¶ 31.) According to All Pro Brace, because it had no knowledge of these offers, it was impossible for All Pro Brace to perform under the terms of any contract. (*Id.* at ¶ 32.) Therefore, All Pro Brace asserts, it is entitled to a declaration that it was impossible to perform under any contract and "its bids[1] should not be forfeited," and that Palmetto and Merchants Bonding Company are bound by this Court's decision. (*Id.* at ¶¶ 33, 34.)

Merchants Bonding Company filed its Answer and a Counterclaim against All Pro Brace on July 13, 2021. (Doc. No. 17.) Therein, Merchants Bonding Company asserts two claims against All Pro Brace: contractual indemnity and common law indemnification. (*Id.* at ¶¶ 5-14.) Merchants Bonding Company also filed a Third Party Complaint against Robert and Jenni Sammon and Michael and Libby Voll, the owners of All Pro Brace. (Doc. No. 18.) Therein, Merchants Bonding Company

---

[1] In Paragraph 34, All Pro Brace alleges that its "bids" should not be forfeited, but it appears that All Pro Brace meant "bonds" as it does not allege anywhere in its Complaint that CMS should re-award those contracts to All Pro Brace or otherwise engage All Pro Brace on the terms of All Pro Brace's September 2019 bids.

4

asserts a single claim of contractual indemnification against the Sammons and the Volls. (*Id.* at ¶¶ 14-20.)

The Federal Defendants filed their Answer on September 7, 2021. (Doc. No. 28.) On February 14, 2022, the Federal Defendants filed the instant Motion to Dismiss for Lack of Jurisdiction. (Doc. No. 36.) All Pro Brace filed its Opposition on March 24, 2022, to which the Federal Defendants replied on April 21, 2022. (Doc. Nos. 38, 41.) Thus, the Federal Defendants' Motion is now ripe for a decision.

## II.     Standard of Review

The Federal Defendants move to dismiss All Pro Brace's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816-17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME*, Local 11, 397 F. Supp. 3d 1076, 1081-82 (S.D. Ohio 2019).

By contrast, a factual attack "raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church,* 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v.*

*Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### III. Analysis

#### A. The Court Construes the Federal Defendants' Motion as a Facial Attack on Jurisdiction Only

In their Reply, the Federal Defendants clarify that their Motion should be construed as both a facial and factual attack on jurisdiction. (Doc. No. 41, PageID# 191.) As noted above, the standard of review of a 12(b)(1) motion depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church,* 847 F.3d at 816-17. Specifically, whether the Court construes the Federal Defendants' Motion as raising a facial or factual attack (or both) determines whether the Court may consider evidence outside the pleadings in ruling on the Motion. *See Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. For the following reasons, the Court construes the Federal Defendants' Motion to raise only a facial challenge to jurisdiction. The disputed facts have no bearing on the Court's resolution of the jurisdictional question at issue here. Whether or not All Pro Brace had a valid PTAN at the time the Federal Defendants allegedly accepted its bids is irrelevant. As discussed *infra*, what is important is simply that All Pro Brace's Complaint implicates issues of its bidding eligibility. Accordingly, the Court accepts All Pro Brace's allegations as true, even though the Federal Defendants dispute All Pro Brace's account of the events surrounding its bids.

#### B. Merits of the Federal Defendants' Motion

The Federal Defendants move to dismiss All Pro Brace's Complaint on the ground that "Congress explicitly barred judicial review of the key aspects involved in establishing and implementing" the Competitive Bidding Program for DMEPOS. (Doc. No. 36-1, PageID# 154.) The

6

Federal Defendants argue that 42 U.S.C. § 1395w-3(b)(12)'s language barring judicial review of "the awarding of contracts under this section," as well as of "the bidding structure and number of contractors selected under this section" reflect Congress's express intent to preclude "judicial review over the implementation of nearly every aspect of the Competitive Bidding Program." (*Id.*)

In response, All Pro Brace argues that the statute does not bar the Court's review of its Complaint because All Pro Brace "does not seek review of either the awarding of a contract by CMS, [or] the structure of the bidding program . . . ." (Doc. No. 38, PageID# 174.) Rather, All Pro Brace "only seeks a declaration that its bonds are not subject to forfeiture under 42 C.F.R. § 414.412(g)(3)(i)[2]." (*Id.*) All Pro Brace argues that because it could not access the bidding portal to view CMS's contract offers, it was impossible for it to know that the offers existed. (*Id.*) Because All Pro Brace's Complaint only goes to the issue of bond forfeiture, and 42 U.S.C. § 1395w-3(b)(12) does not specifically prohibit judicial review of bond forfeiture, All Pro Brace argues that this Court "is not statutorily precluded from having subject matter jurisdiction over the claim." (*Id.* at PageID# 174-75.)

To ascertain whether subject matter jurisdiction exists over All Pro Brace's claims, the Court must determine whether any statute precludes judicial review. There is a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action . . . ." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991). However, "[t]his presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific

---

[2] 42 C.F.R. § 414.412 sets out the regulations for the DMEPOS Competitive Bidding Program. Section 414.412(g) sets forth the requirement that all bidding entities must obtain a surety bond for each DMEPOS bid submitted. According to § 414.412(g)(3)(i), "when a bidding entity is offered a contract for a CBA/product category. . . and the bidding entity does not accept the contract offer, its bid surety bond submitted for that CBA will be forfeited and CMS will collect on the bond via Electronic Funds Transfer (EFT) from the respective bonding company." 42 C.F.R. § 414.412(g)(3)(i).

legislative history that is a reliable indicator of congressional intent." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).

Here, the Federal Defendants assert that 42 U.S.C. § 1395w-3(b)(12), a portion of the Medicare Part B statute which governs the "competitive acquisition of certain items and services," bars judicial review. The statute provides as follows:

(12) No administrative or judicial review

There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of—

(A) the establishment of payment amounts under paragraph (5);

(B) the awarding of contracts under this section;

(C) the designation of competitive acquisition areas under subsection (a)(1)(A) and the identification of areas under subsection (a)(1)(D)(iii);

(D) the phased-in implementation under subsection (a)(1)(B) and implementation of subsection (a)(1)(D);

(E) the selection of items and services for competitive acquisition under subsection (a)(2);

(F) the bidding structure and number of contractors selected under this section; or

(G) the implementation of the special rule described in paragraph (10).

42 U.S.C. § 1395w-3(b)(12).

Other courts, in interpreting this statutory provision, have concluded that the "presumption of reviewability . . . is overcome by the specific and emphatic statutory language prohibiting judicial review of the competitive bidding procedure." *Texas Alliance for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012). In *Texas Alliance*, the D.C. Circuit affirmed the district court's conclusion that § 1395w-3(b)(12) precluded judicial review of the Secretary's regulation on financial

8

standards for DMEPOS bidders and therefore deprived the district court of jurisdiction. *Id*. The *Texas Alliance* plaintiff, a trade association representing durable medical equipment suppliers, challenged a regulation that addressed the applicable financial standards that a DMEPOS supplier must meet to be eligible for Medicare contracts under the Competitive Bidding Program established in 42 U.S.C. § 1395w-3. *Id.* at 404. The circuit court emphasized that Congress's mandate "that there be '*no* administrative or judicial review' under the two cited statutes '*or otherwise*' unequivocally precludes review of the Secretary's actions addressing the seven aspects of the competitive bidding program enumerated in subsections (b)([12])(A)-(G) (emphases added)." *Id.* at 409. The court concluded that this unequivocal language, "combined with the broad range of subjects expressly immunized from review," indicated Congress's intent to institute the Competitive Bidding Program "without risk of litigation blocking the execution of the program." *Id.* (citing *Cardiosom, LLC v. U.S.*, 656 F.3d 1322, 1326 (Fed. Cir. 2011)).

Likewise, in *Key Med. Supply, Inc. v. Burwell*, the Eighth Circuit concluded that § 1395w-3(b)(12)'s bar "is clear on its face and broad in its listing of protected actions." 764 F.3d 955, 961-62 (8th Cir. 2014). The court noted that the statute's "several sub-parts . . . define types of actions or decisions that are shielded from review," including "the awarding of contracts" and "the bidding structure and number of contractors selected[.]" *Id.* at 962. It agreed with the *Texas Alliance* court that there was "no basis in the statute or otherwise to adopt a narrow construction of the facially broad and emphatic bar." *Id.*

In *Premier Medical Supplies, Inc. v. Leavitt*, a court within this district concluded that § 1395w-3(b)(12) deprived the court of jurisdiction over the plaintiffs' challenge to CMS's rejection of their bids. No. 1:07-CV-3809, 2008 WL 11381846, at *4 (N.D. Ohio Jun. 30, 2008). Therein, the

9

court concluded that the "entire bidding process is part and parcel of the 'awarding of contracts,' for which judicial review is unavailable." *Id.*

Upon review, the Court concludes that it lacks jurisdiction over All Pro Brace's claims. The Court agrees with the analyses set forth in *Texas Alliance*, *Key Medical*, and *Premier Medical*: the statutory language unequivocally precludes any judicial review over the seven aspects of the Competitive Bidding Program enumerated in subsections (A) through (G). The Court finds that the statutory language barring judicial review over subsection (B), "the awarding of contracts," and subsection (C), "the bidding structure," is unambiguous and sweeping, and prevents the Court from reviewing the merits of All Pro Brace's claims.

First, All Pro Brace's claims fall within the ambit of subsection (B), which provides that there will be "no administrative or judicial review . . . of . . . (B) the awarding of contracts." § 1395w-3(b)(12)(B). Eligibility determinations are part of the overall Competitive Bidding Program award scheme. *All Florida Network Corp. v. U.S.*, 82 Fed. Cl. 468, 473 (Ct. Fed. Cl. 2008). *See also, e.g., Premier Medical Supplies, Inc.*, 2008 WL 11381846, at *4 (the "entire bidding process is part and parcel of the 'awarding of contracts,' for which judicial review is unavailable"). In *All Florida Network Corp.*, the plaintiff, a network of DMEPOS suppliers, challenged its disqualification from the Competitive Bidding Program due to CMS's determination that the plaintiff failed to provide required hard copies of certain financial documents. *Id.* at 470-71. Though the plaintiff styled its claim as challenging CMS's "eligibility determinations," the court concluded that eligibility determinations "are part of the overall award scheme," and therefore, of "the awarding of contracts." *Id.* The court reasoned that eligibility determinations were part of the overall awarding of contracts because a CMS regulation, 42 C.F.R. § 414.414, set forth "the eligibility standards for suppliers

seeking to bid for DMEPOS contracts and specifies that contract awards may only be made to suppliers who meet certain 'quality standards and accreditation' as well as 'financial standards.'" *Id.* Because the plaintiff challenged CMS's determination that it failed to meet CMS's eligibility standards for awarding contracts, the court concluded that the plaintiff directly challenged a CMS decision regarding "the awarding of contracts." *Id.*

All Pro Brace asserts that its claims only relate to the issue of bond forfeiture. (Doc. No. 38, PageID# 178.) However, its claims necessarily challenge a CMS decision regarding "the awarding of contracts" because All Pro Brace's claims necessarily implicate bidding eligibility determinations under § 414.414. Section 414.414, titled "Conditions for awarding contracts," is found within the regulations governing the Competitive Bidding Program for DMEPOS. 42 C.F.R. § 414.414. Section 414.414(b) sets out the regulations for determining "Basic supplier eligibility." *Id.* According to § 414.414(b)(1), "[e]ach supplier must meet the enrollment standards specified in § 424.57(c) of this chapter." *Id.* Section 424.57(c) sets forth various accreditation and supplier billing number requirements, including that DMEPOS suppliers must retain a supplier billing number. 42 C.F.R. § 424.57(c)(22)-(25). Further, § 424.57(c)(26) provides that suppliers "[m]ust meet the surety bond requirements specified in paragraph (d) of this section." 424.57(c)(26). Thus, All Pro Brace's eligibility—i.e, whether it did or did not have a valid PTAN at the time CMS allegedly awarded All Pro Brace the contracts—and the requirement that bidders maintain surety bonds are incorporated by reference within the regulation governing the conditions for awarding contracts. Congress was abundantly clear that "[t]here shall be no administrative or judicial review . . . of . . . (B) the awarding of contracts under this section." § 1395w-3b(12)(B). Thus, the Court may not review All Pro Brace's claims.

Second, All Pro Brace's claims also fall within the ambit of subsection (F), which provides that there will be "no administrative or judicial review . . . of . . . (F) the bidding structure and number of contractors selected under this section." § 1395w-3(b)(12)(F). In *Texas Alliance*, the D.C. Circuit considered when a claim challenged the "bidding structure" of the Competitive Bidding Program. 681 F.3d. at 411. In that case, the plaintiff challenged the Secretary's promulgated DMEPOS bidder financial requirements. *Id.* The court concluded that the "financial standards, as eligibility criteria, are integral to the bidding structure the Secretary has erected." *Id.* These financial standards were "identified in each individual Request for Bids, which lists the financial documentation to be submitted; the bidder submits the financial documents to CMS along with its bid; and the bidder learns if it fails the standards in the notice of rejection of the bid." *Id.* Thus, "[f]inancial eligibility under the applicable standards . . . is inextricably intertwined with the bidding structure and review thereof is therefore expressly precluded by subsection (b)([12])(F)." *Id.*

Likewise, All Pro Brace's eligibility is premised on, among other criteria, a valid PTAN, as well as compliance with the surety bond regulations. *See* § 414.414(b)(1), citing § 424.57(c). Additionally, § 414.412, "Submission of bids under a competitive bidding program," regulates the entire structure of the DMEPOS Competitive Bidding Program, including setting forth the requirements that all bidders obtain surety bonds and that bidders would forfeit their surety bonds if they failed to accept CMS's contract offers. *See* § 414.412(g)(1)-(3). Thus, the regulation governing the structure of the bidding program expressly includes the regulation governing the entire surety bond procedure, including forfeiture of the bonds. The Court is expressly precluded from reviewing either eligibility criteria or surety bond requirements because both categories are inextricably intertwined with the bidding structure. *Texas Alliance for Home Care Servs.*, 681 F.3d at 411. The

Court is therefore precluded from deciding the key questions underpinning the merits of All Pro Brace's case: whether All Pro Brace was unable to access the bidding portal due to suspension of its PTAN, and whether All Pro Brace should be excepted from the bond forfeiture requirement due to a suspension of its PTAN. *Id.*; *see also Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1131 (D.C. Cir. 2017) (concluding eligibility criteria, including financial standards, were "integral to" and "inextricably intertwined with the bidding structure" and therefore review was expressly precluded by the DMEPOS statute).

All Pro Brace's argument that it only challenges CMS's bond forfeiture decision, not the awarding of contracts or the bidding structure of the DMEPOS Competitive Bidding Program, is not persuasive. (Doc. No. 38, PageID# 177-78.) Other courts have rejected attempts to parse Congress's broad, unequivocal bar on judicial review into smaller, reviewable parts. For example, in *Carolina Med. Sales v. Leavitt*, the plaintiffs challenged the Secretary's decision to treat "mail order" diabetic suppliers differently from "storefront" diabetic suppliers in the bidding process. 559 F. Supp. 2d 69, 75 (D.D.C. 2008). The plaintiffs argued that Congress's silence regarding delivery method in the text of the DMEPOS statute "denote[d] an intent to omit it from the ambit of the Secretary's discretion . . . ." *Id.* at 77. However, the court rejected this interpretation, concluding that the plaintiffs read the statute "too ungenerously." *Id.* The court observed that the judicial bar provision was "broad, unqualified, and clear," reflecting Congress's unambiguous intent to bar judicial review. *Id.* In rejecting the plaintiffs' attempt to narrow the scope of the judicial bar, the court observed that "[t]he plaintiffs proffer no reason why Congress would—after imbuing the Secretary with unreviewable discretion over establishing payment amounts, awarding contracts, designating competitive acquisition areas, phasing-in implementation and determining the bidding structure and number of

13

contractors—decide to carve out an isolated patch for judicial review of the Secretary's implementation of the competitive bidding program based on the Secretary's consideration of delivery method." *Id.*

Similarly, in *All Florida Network*, the court rejected a similar attempt to parse out a smaller reviewable piece from the broad statutory ban on judicial review. *All Florida Network Corp.*, 82 Fed. Cl. at 474. The court held that "Congress intended the Secretary of HHS to have the authority to expeditiously implement the DMEPOS bidding program." *Id.* In granting this authority, Congress "precluded judicial review of specific decisions," including those pertaining to awarding of contracts. *Id.* The court noted that permitting litigants "to bring protests by parsing the categories of decisions precluded from judicial review into challengeable subcomponents would 'frustrate Congress' intent and potentially hamstring the Secretary's ability' to do just that." *Id.* (quoting *Carolina Med. Sales*, 559 F. Supp. 2d at 79). Like the plaintiffs in *Carolina Medical Sales* and *All Florida Network*, All Pro Brace attempts to carve out a small reviewable patch from an otherwise broad, unambiguous bar on judicial review. However, All Pro Brace cannot escape the fact that in deciding the merits of its case, the Court would have to review CMS's decisions about All Pro Brace's bidder eligibility and the status of its PTAN—both of which directly relate to the awarding of contracts and the bidding structure under the DMEPOS statute.

Some courts have noted that Congress's unequivocal bar on judicial review may lead to harsh results. For example, in *Key Medical Supply*, the Eighth Circuit noted that "[t]he district court expressed substantial concern" about the impact that the challenged CMS bidding regime would have on certain eligible patients who relied upon specific types of feeding tubes. 764 F. 3d at 961. Despite its concerns, however, the district court "applied the bar on review and dismissed the APA claim for

lack of jurisdiction." *Id.* In *All Florida Network*, the court noted that CMS told the plaintiff on separate occasions that the plaintiff failed to submit different sets of financial documents, and that "[t]his inconsistency cast[ ] doubt on the accuracy" of both of CMS's reports to the plaintiff. 82 Fed. Cl. at 471. In its conclusion, the court recognized "that an examination of the merits of this bid protest might reveal that Plaintiff was wrongly disqualified by Government mishandling of its papers." *Id.* at 474. However, the court concluded that this was "the price Plaintiff must pay for Congress' deliberate decision to prohibit such review." *Id.* Here, it is unclear whether an examination of the merits would reveal whether All Pro Brace lost access to the bidding portal due to a suspension of its PTAN, or whether All Pro Brace was left in the dark about CMS's purported acceptance of its bids. However, Congress's "deliberate decision" to bar judicial review over decisions related to "the awarding of contracts" and "the bidding structure" is abundantly clear. Accordingly, the Court concludes it lacks subject matter jurisdiction over All Pro Brace's claims.

## IV. Conclusion

For the reasons set forth above, the Federal Defendants' Motion to Dismiss (Doc. No. 36) is GRANTED.

**IT IS SO ORDERED.**

                                               *s/Pamela A. Barker*
                                               PAMELA A. BARKER
Date: July 8, 2022                         U.S. DISTRICT JUDGE