IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ALL PRO BRACE, LLC,** | CASE NO. 1:21-cv-00896 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** *et al.*, | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

This matter is before the Court upon Defendant/Counter-Plaintiff/Third-Party Plaintiff Merchants Bonding Company's ("MBC") Motion for Summary Judgment on its Counterclaim against Plaintiff/Counter-Defendant All Pro Brace, LLC ("All Pro Brace") as well as its Third-Party Complaint against Third-Party Defendants Michael Voll and Libby Voll (collectively, the "Volls"; together with All Pro Brace, the "Indemnitors").[1]  (Doc. No. 52.)  No party has filed a brief in opposition to MBC's Motion.  Accordingly, MBC's Motion for Summary Judgment is ripe for a decision.

For the following reasons, MBC's Motion for Summary Judgment is **GRANTED**.  (Doc. No. 52.)

**I.    Factual Background**

---

[1] MBC's Motion for Summary Judgment refers to "the Indemnitors" in some places as meaning both All Pro Brace and the Volls (Doc. No. 52 at p. 2), and in others as a group distinct from All Pro Brace (Doc. No. 52 at p. 2).  Because MBC seeks relief against "the Indemnitors" without distinguishing All Pro Brace as a separate entity, the Court construes "the Indemnitors" as it appears in MBC's Motion to include both All Pro Brace and the Volls.  (*See id.* at p. 8.)

All Pro Brace procured three separate bid surety bonds from MBC, bearing bond numbers OH5171599, OH5171598, and OH5171597 ("the Bonds").[2] (Doc. No. 52-1 at pp. 2, 4, 6.) Each bond was worth $50,000.00, had an effective date of August 5, 2019, and named All Pro Brace as principal, MBC as surety, and the Center for Medicare and Medicaid Services ("CMS") as obligee. (*Id.*) In September 2019, All Pro Brace submitted three competitive bids under the Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") Competitive Bidding Program. (*Id.*) By submitting its bids, All Pro Brace sought to become a designated DMEPOS supplier for three of CMS' Competitive Bidding Areas ("CBAs"): Toledo, Akron, and Cleveland-Elyria. (*Id.*)

According to the Affidavit of MBC Claims Examiner Amy Baker, as consideration for MBC's agreement to act as surety for All Pro Brace's bids, MBC required All Pro Brace and the Volls to execute an Indemnity Agreement.[3] (Baker Aff. (Doc. No. 52-4) at ¶ 4.) The Indemnity Agreement[4] provides in relevant part:

> The undersigned . . . agrees to indemnify and save harmless [MBC], in connection with any bond executed on behalf of the person or entity named as applicant, for, from and against any and all losses, costs, damages and expenses of any nature whatsoever, including counsel fees and expenses[] . . . .
>
> If [MBC] shall set up a reserve to cover any claim, suit or judgment under any such bonds, the undersigned will, immediately upon demand, deposit with [MBC] a sum of

---

[2] Copies of the three Bonds are attached as Exhibit A to MBC's Motion for Summary Judgment. (Doc. No. 52-1.)

[3] Ms. Baker's Affidavit is attached as Exhibit D to MBC's Motion, along with the exhibits Ms. Baker considered in her Affidavit. (Doc. No. 52-4 at pp. 2–4.) Although unaddressed in Ms. Baker's Affidavit, MBC alleges elsewhere that it also required Jenni Sammon and Robert Sammon (collectively, the "Sammons"), whom MBC named as Third-Party Defendants, to execute the Indemnity Agreement. (Doc. No. 18 at ¶ 11.) The Sammons admitted that they executed the Indemnity Agreement. (Doc. No. 25 at ¶ 11 (the Sammons' Answer to MBC's Third-Party Complaint, Doc. No. 18 at ¶ 11.).) However, as discussed *infra*, the Sammons have been dismissed from this case. (Doc. No. 57.) Therefore, the Court's resolution of the instant Motion for Summary Judgment pertains only to the remaining Defendants in this case, All Pro Brace and the Volls.

[4] The Indemnity Agreement is attached as Exhibit B to MBC's Motion, located within a Commercial Bond Application bearing MBC's letterhead. (Doc. No. 52-2.)

2

money equal to such reserve, such sum to be held by [MBC] as collateral security on such bonds[] . . . .

(Doc. No. 52-2.) Ms. Baker avers that, in reliance upon the Indemnitors' execution of the Indemnity Agreement, MBC executed the three Bonds in conjunction with All Pro Brace's bids. (Baker Aff. at ¶ 5.)

On February 2, 2021, CMS, through its agent Palmetto GBA, informed MBC that CMS had forfeited each of the Bonds pursuant to 42 C.F.R. § 414.412(g)(3)(i) and sought payment of the penal sums of the Bonds, which totaled $150,000.00. (Baker Aff. at ¶ 6; Doc. No. 1-2 at pp. 2, 3). *See also* 42 C.F.R. § 414.412(g)(3)(i). All Pro Brace thereafter filed its initial Complaint for Declaratory Judgment on April 29, 2021, naming as Defendants Xavier Becerra, Secretary, United States Department of Health and Human Services; Chiquita Brooks-LaSure,[5] Administrator, CMS; and Palmetto GBA (collectively, "Federal Defendants"), as well as MBC. (Doc. No. 1.) All Pro Brace sought a declaration that the Bonds were not subject to forfeiture by CMS. (*Id.* at pp. 5–6.) On July 8, 2022, this Court dismissed All Pro Brace's claims for lack of subject matter jurisdiction. (Doc. No. 42.)

On January 25, 2023, MBC sent a letter to the Indemnitors informing them that MBC had received notice from CMS of All Pro Brace's forfeiture of the Bonds and subsequently "established reserves totaling $150,000." (Baker Aff. at ¶ 9; Doc. No. 52-4 at p. 10.) MBC demanded that, pursuant to the Indemnity Agreement, the Indemnitors place funds in collateral "for the full amount of its reserves." (Doc. No. 52-4 at p. 10.) MBC also informed the Indemnitors that it had expended

---

[5] All Pro Brace named as Defendant Liz Richter, former Acting Administrator of CMS. (Doc. No. 1.) Defendants Xavier Becerra, Secretary, United States Department of Health and Human Services; Chiquita Brooks-LaSure, Administrator, CMS; and Palmetto GBA ("Federal Defendants") filed an Answer to All Pro Brace's Complaint, in which the Federal Defendants automatically substituted Ms. Brooks-LaSure for Ms. Richter pursuant to Federal Rule of Civil Procedure 25(d). (Doc. No. 28 at ¶ 4.)

$11,188.90 in attorney's fees and demanded that the Indemnitors reimburse it for these expenses as agreed to in the Indemnity Agreement. (*Id.*) According to Ms. Baker, as of August 8, 2023, the Indemnitors have not provided the collateral or reimbursed MBC for its damages. (Baker Aff. at ¶ 9.)

On June 2, 2023, CMS, through Palmetto GBA, sent a revised letter to MBC, acknowledging this Court's dismissal of All Pro Brace's lawsuit. (Doc. No. 52-4 at p. 6.) CMS re-affirmed that CMS had forfeited the Bonds and again demanded full payment from MBC of the penal sum of the Bonds. (*Id.*; *see also* Baker Aff. at ¶ 7). On June 28, 2023, MBC issued three checks to CMS, each in the amount of $50,000.00 and in satisfaction of CMS' claims against the Bonds. (Baker Aff. at ¶ 10; Doc. No. 52-4 at pp. 22–24.)

## II. Procedural History

On July 13, 2021, MBC filed an Answer to All Pro Brace's Complaint as well as a Counterclaim. (Doc. No. 17.) In the Counterclaim, MBC alleges claims against All Pro Brace for Contractual Indemnity (Count I) and Common Law Indemnification (Count II). (*Id.*) Specifically, in Count I, MBC alleges that All Pro Brace breached the Indemnity Agreement by failing to hold MBC harmless and indemnify it from and against any losses it incurred in connection with the Bonds. (Doc. No. 17 at ¶¶ 7–10.) In Count II, MBC contends that All Pro Brace has a common law duty to indemnify MBC for all losses related to MBC's role in issuing the Bonds. (*Id.* at ¶¶ 13–14.)

Also on July 13, 2021, MBC filed a Third-Party Complaint against the Volls,[6] alleging a single count for Contractual Indemnification. (Doc. No. 18.) Therein, MBC alleges, in relevant part,

---

[6] MBC also named Robert Sammon and Jenni Sammon as Third-Party Defendants. (Doc. No. 18.) On November 17, 2022, Jenni Sammon filed a First Amended Answer to MBC's Third-Party Complaint and a Crossclaim against Robert Sammon. (Doc. Nos. 46-1, 49.) In November and December 2022, Jenni and Robert Sammon each filed for bankruptcy protection. (Doc. No. 50; Non-Document Order, Dec. 12, 2022.). *See also In re Jenni Lynn Sammon*, Case No. 22-13751-

4

that the Volls breached the Indemnity Agreement by failing to save harmless MBC and indemnify it from any losses that it has suffered and may continue to suffer because MBC executed the Bonds. (Doc. No. 18 at ¶¶ 15, 18.)

On August 3, 2021, All Pro Brace filed an Answer to MBC's Counterclaim, and the Volls filed an Answer to MBC's Third-Party Complaint. (Doc. Nos. 25, 26.) As noted above, on July 8, 2022, this Court dismissed All Pro Brace's claims, leaving pending the instant Counterclaim and Third-Party Complaint. (Doc. No. 42.)

On August 12, 2022, counsel for All Pro Brace withdrew and indicated that All Pro Brace was "in the process of retaining new counsel and/or considering whether to retain new counsel." (Doc. No. 43 at p. 2; Non-Document Order, Aug. 12, 2022.) The Court expressly warned All Pro Brace of the need to obtain legal representation to appear in this case. (Non-Document Order, Aug. 12, 2022.) The docket reflects that All Pro Brace has failed to retain counsel.

On August 15, 2023, MBC filed the instant Motion for Summary Judgment against All Pro Brace and the Volls. (Doc. No. 52.) Neither All Pro Brace nor the Volls have filed a brief in opposition to MBC's Motion.

---

jps (Bankr. N.D. Ohio); *In re Robert E. Sammon*, Case No. 22-13532-skk (Bankr. N.D. Ohio). On December 12, 2022, the Court stayed this case as to the Sammons. (Non-Document Order, Dec. 12, 2022.) Due to this stay, MBC did not move for summary judgment against the Sammons. (Doc. No. 52 at p. 2 n.1.) On October 16, 2023, upon review, it appeared to the Court that the Sammons' bankruptcy proceedings had each substantively concluded, with their potential liability to MBC discharged in bankruptcy. (Non-Document Order, Oct. 16, 2023.) Accordingly, the Court lifted the stay in this case as to the Sammons and ordered MBC to "either move to dismiss Jenni Sammon and Robert Sammon from its third-party claims (Doc. No. 18), or otherwise inform the Court as to how it intends to proceed against them, by October 24, 2023." (*Id.*) The Court also ordered Jenni Sammon to "either move to dismiss her Crossclaim against Robert Sammon (Doc. No. 46-1), or otherwise inform the Court as to how she intends to proceed against him, by October 24, 2023." (Non-Document Order, Oct. 17, 2023.) On October 24, 2023, Jenni Sammon moved to voluntarily dismiss her Crossclaim against Robert Sammon (Doc. No. 54) and the Court dismissed it accordingly (Non-Document Order, Oct. 24, 2023.) Additionally, after MBC failed to comply with the Court's October 16, 2023, Order, the Court extended MBC's deadline to October 30, 2023. (Non-Document Order, Oct. 25, 2023.) On October 26, 2023, MBC filed a Notice Dismissing Claims Against Robert Sammon and Jenni L. Sammons, citing the Sammons' bankruptcy discharge. (Doc. No. 56.) The Court thereafter dismissed the Sammons from MBC's claims, and no claims remain pending in this case against the Sammons. (Doc. No. 57.).

### III. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material . . . only if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may [also] meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at

508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

When a motion for summary judgment is unopposed, "[t]he facts presented and designated by the moving party [are] the facts at hand to be dealt with by the trial court." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). "A district court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact." *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007). The moving party "still 'bears the burden of demonstrating the absence of a genuine issue as to a material fact.'" *Garnett v. Akron City Sch. Dist. Bd. of Educ.*, 2023 WL 6632836, at *2 (6th Cir. Oct. 12, 2023) (quoting *Carver v. Bunch*, 946 F.3d 451, 454 (6th Cir. 1991)). A court must, "at a minimum, [] examine the movant's motion for summary judgment to ensure that [it] has discharged that burden." *Carver*, 946 F.2d at 455. Thus, a court "'must . . . intelligently and carefully review the legitimacy of' an unopposed motion." *Garnett*, 2023 WL 6632836, at *2 (quoting *Guarino*, 980 F.2d at 404). "With that said, [a] court should not become an advocate for the nonmoving party." *Id.* It is "utterly inappropriate for [a] court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* (citation omitted).

IV. **Analysis**

Prior to reaching the merits of MBC's Motion, the Court notes the following. MBC's Motion for Summary Judgment does not expressly indicate on which Count of the Counterclaim it seeks summary judgment. Because MBC's Motion refers to the Indemnity Agreement in detail and does

not address common law indemnification,[7] the Court will construe MBC's Motion as seeking judgment in its favor only with respect to its Contractual Indemnification claims against All Pro Brace[8] and the Volls. (Doc. No. 52 at pp. 6–8.) The Court further notes that, although neither All Pro Brace nor the Volls have responded to MBC's Motion, the Court will carefully "examine the motion to ensure that [MBC] has met its initial burden" under Federal Rule of Civil Procedure 56. *See Nat'l City Mortg. Co. v. Trust Am. Mortg.*, 2009 WL 10710459, at *2 (S.D. Ohio Apr. 22, 2009); *see also Garnett*, 2023 WL 6632836, at *2–3.

For the following reasons, the Court concludes that MBC is entitled to summary judgment on its Contractual Indemnification causes of action.

In Ohio,[9] "[i]ndemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete

---

[7] MBC fails to address its Counterclaim cause of action for Common Law Indemnification (Count II) in its Motion. (Doc. No. 52.) Accordingly, the Court considers the Common Law Indemnification Claim (Count II) as abandoned by MBC. *See Amur Equip. Fin., Inc. v. KMH Sys.*, 2020 WL 2297023, at *1 n.4 (M.D. Tenn. Apr. 15, 2020), *report and recommendation adopted*, 2020 WL 2217434 (M.D. Tenn. May 7, 2020) ("Because Plaintiff does not address this claim in its motion and does not seek summary judgment on this claim, . . . the Court views this claim as being abandoned by Plaintiff.").

[8] All Pro Brace has been unrepresented in this case since August 12, 2022. (Doc. No. 43; Non-Document Order, Aug. 12, 2022.) In the Sixth Circuit, "a corporation cannot appear in federal court except through an attorney." *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984). A limited liability company such as All Pro Brace "is another example of an artificial entity that should retain legal counsel before appearing in federal court." *Hilton I. Hale & Assocs., LLC v. Gaebler*, 2011 WL 308275, at *1 (S.D. Ohio Jan. 28, 2011). This Court has warned All Pro Brace of the need to obtain counsel in this case. (Non-Document Order, Aug. 12, 2022.) Although the Court could find All Pro Brace in default for failing to retain counsel, the Court will instead evaluate MBC's Motion for Summary Judgment as unopposed by All Pro Brace. *See Nat'l City Mortg. Co. v. Trust Am. Mortg.*, 2009 WL 10710459, at *2–3 (S.D. Ohio Apr. 22, 2009); *see also Silvertronic Ltd. v. Adaptive Interconnect Elecs., Inc.*, 2019 WL 3387449, at *2 (N.D. Ohio Mar. 1, 2019) (allowing for default judgment against unrepresented business entity).

[9] In a diversity case, federal courts apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Here, MBC requests that the Court interpret the Indemnity Agreement under Ohio law, and the Indemnitors do not dispute that Ohio law applies. (Doc. No. 52 at pp. 6–7.) Therefore, the Court applies Ohio law. A federal court exercising diversity jurisdiction must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks omitted). If the Ohio Supreme Court has not addressed the issue presented, the court "must anticipate how [Ohio's] highest court would rule and may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination." *Kepley*, 715 F.3d at 972 (internal quotation marks omitted).

reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987). "In general, to indemnify is to make whole and has been defined to mean to save harmless by giving security for the reimbursement of a person in case of anticipated loss . . . ." *Id.* "Courts interpret indemnity agreements the same way they interpret contracts." *Papatheodorou v. Clark*, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011). As the Ohio Supreme Court explained:

> The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used. All words used must be taken in their ordinary and popular sense, [] and when a writing is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally presents.

*Worth*, 513 N.E.2d at 256 (internal citations, quotation marks, and original alterations omitted); *see also Glaspell v. Ohio Edison Co.*, 505 N.E.2d, 264, 267 (Ohio 1987) (noting that indemnity agreement should be construed such as "all the words used [must] be taken in their ordinary and popular sense").

A breach of contract occurs when: "(i) a party demonstrates the existence of a binding contract or agreement; (ii) the nonbreaching party performed its contractual obligations; (iii) the allegedly breaching party failed to fulfill its contractual obligations without legal excuse; and (iv) the nonbreaching party suffered damages as a result of the breach." *Phila. Indem. Ins. Co. v. Fox*, 2019 WL 2437442, at *2 (S.D. Ohio June 10, 2019) (citing *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926 (Ohio App. 4th Dist. 2007)). In this case, the Indemnitors admit that they entered into the Indemnity Agreement with MBC. (Doc. No. 26 at ¶ 4 (All Pro Brace's Answer to MBC's Counterclaim, Doc. No. 17 at ¶ 4); Doc. No. 25 at ¶ 11 (the Volls' Answer to MBC's Third-Party Complaint, Doc. No. 18 at ¶ 11.)) The Court must therefore interpret the Indemnity Agreement to discern the Indemnitors' obligations under it and whether the Indemnitors breached those obligations.

"[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008); *see Ohio Hist. Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 345 (Ohio App. 10th Dist. 1989). It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." *Savedoff*, 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)); *see U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio App. 2d Dist. 1998). "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co*, 374 N.E.2d 146, 150 (Ohio 1978). "The [c]ourt must look to the plain language of the contract, and only go beyond the plain language of the agreement to determine the rights and obligations of the parties if it is ambiguous." *Airlink Communs., Inc. v. Owl Wireless, LLC*, 2011 WL 4376123, at *2 (N.D. Ohio Sept. 20, 2011) (internal citations omitted).

"Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio App. 10th Dist. 2003) (citation omitted); *see also Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009). "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." *Covington*, 784 N.E.2d at 190. In determining whether contractual language is ambiguous, the contract "must be construed as a whole," *Tri-State Grp., Inc. v. Ohio Edison Co.*, 782 N.E.2d

10

1240, 1246 (Ohio App. 7th Dist. 2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 197 N.E. 923, 926 (Ohio App. 5th Dist. 1934)), so as "to give reasonable effect to every provision in the agreement," *Stone v. Nat'l City Bank*, 665 N.E.2d 746, 752 (Ohio App. 8th Dist. 1995). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *JBlanco Enters. v. Soprema Roofing & Waterproofing, Inc.*, 2016 WL 6600423, at *4 (N.D. Ohio Nov. 8, 2016) (citation omitted).

In its Motion for Summary Judgment, MBC seeks judgment that the Indemnity Agreement requires the Indemnitors to indemnify MBC for its losses. (Doc. No. 52.) To resolve this issue, the Court must answer two questions: (1) under what circumstances are the Indemnitors required to indemnify MBC pursuant to the Indemnity Agreement; and (2) whether MBC's claimed damages are those to which the Indemnity Agreement applies.

A. The Indemnitors' Obligations Under the Indemnity Agreement

MBC contends that the terms of the Indemnity Agreement are unambiguous and should be enforced. (Doc. No. 52 at p. 6.) MBC asserts that the Indemnitors agreed to indemnify MBC for any and all liability, losses, and damages, including attorney's fees, that MBC has incurred or may incur by reason of MBC's issuing the Bonds as surety. (*Id.* at pp. 6–7.)

For the following reasons, the Court agrees with MBC. The Indemnity Agreement provides, in relevant part:

> The undersigned . . . agrees to indemnify and save harmless [MBC], in connection with any bond executed on behalf of the person or entity named as applicant, for, from and against any and all losses, costs, damages and expenses of any nature whatsoever, including counsel fees and expenses[] . . . .
>
> If [MBC] shall set up a reserve to cover any claim, suit or judgment under any such bonds, the undersigned will, immediately upon demand, deposit with [MBC] a sum of

money equal to such reserve, such sum to be held by [MBC] as collateral security on such bonds[] . . . .

(Doc. No. 52-2 at p. 2.) The Court concludes that the Indemnity Agreement "can be given a single, definite legal meaning," and is therefore unambiguous as a matter of law. *Cleveland Clinic Health System-East Region v. Innovative Placements, Inc.*, 2012 WL 1998049, at *2 (N.D. Ohio June 4, 2012). The Indemnity Agreement, contained in a Commercial Bond Application for All Pro Brace, provides that the Indemnitors agree "jointly and severally" to "indemnify and save harmless [MBC] . . . for, from and against any and all losses, costs, damages, and expenses of any nature whatsoever" incurred "in connection with any bond executed on behalf of the person or entity named as applicant," here, All Pro Brace. (Doc. No. 52-2 at p. 2.) A plain and ordinary reading of the Indemnity Agreement shows that the Indemnitors agreed to indemnify MBC for *all* losses MBC might incur *in connection with* any of the three DMEPOS Bonds. In other words, where MBC suffers losses related to the Bonds in any way (whether by CMS' claims in the event of default, MBC's use of an attorney to request that All Pro Brace provide collateral, or otherwise), the plain language of the Agreement provides that the Indemnitors must indemnify MBC for these losses, without limitation.

Because the Indemnity Agreement is unambiguous, the Court next considers whether the Indemnity Agreement requires the Indemnitors to indemnify MBC in this case, that is, whether MBC's claimed losses were incurred "in connection with" the Bonds. (*Id.*) Because no response has been filed to the Motion, the evidence before the Court is undisputed. *See Am. Contrs. Indem. Co. v. Stice Fam. Logistics LLC*, 2019 WL 1924815, at *2 n.1, *3–5 (S.D. Ohio Apr. 30, 2019) (holding that unopposed motion for summary judgment means that evidence is undisputed).

Ms. Baker avers that MBC incurred $150,000.00 worth of losses, plus attorney's fees, because of its payments to CMS after CMS forfeited the Bonds. (Baker Aff. at ¶ 10.) This alone is

12

sufficient to demonstrate that MBC's claimed losses were incurred in connection with the Bonds, but the regulatory scheme further confirms this connection. 42 C.F.R. § 414.412(g)(3)(i) sets out the regulations for the DMEPOS Competitive Bidding Program. Section 414.412(g)(3)(i) requires all entities bidding to become a DMEPOS supplier in a CBA to obtain a surety bond for each bid for each CBA. 42 C.F.R. § 414.412(g)(3)(i). Under Section 414.412(g)(3)(i), "[w]hen a bidding entity is offered a contract for a CBA/product category . . . and the bidding entity does not accept the contract offer, its bid surety bond submitted for that CBA will be forfeited and CMS will collect on the bond via Electronic Funds Transfer (EFT) from the respective bonding company." 42 C.F.R. § 414.412(g)(3)(i). The Bonds expressly provide that, if CMS offers a contract to All Pro Brace and All Pro Brace does not accept it, CMS will find the bid in default, provide notice of the same to MBC as surety, and require MBC to tender the value of the defaulted Bond to CMS. (Doc. No. 52-1 at pp. 3, 5, 7; Doc. No. 52-3 at p. 8, ¶ 1.)[10]

All Pro Brace admits that CMS accepted the bids and offered it three contracts, one for each of the CBAs covered by the Bonds. (Doc. No. 52-3 at pp. 8–9, ¶¶ 2–3.) All Pro Brace did not accept the contract offers and defaulted on its obligations as principal under the Bonds. (*Id.* at p. 9, ¶ 4.) It is undisputed that CMS thereafter forfeited the Bonds. (Baker Aff. at ¶¶ 6, 7). *See also* Doc. No. 52-4 at p. 6 (indicating that the Bonds "me[t] the forfeiture conditions outlined in 42 C.F.R.

---

[10] MBC sent Requests for Admission (Doc. No. 52-3) to All Pro Brace, to which All Pro Brace did not respond. (Doc. No. 52-3; Doc No. 52 at pp. 3–4.) In its Motion, MBC argues that, by virtue of All Pro Brace's failure to respond, the Requests for Admission are deemed admitted. (*See* Doc. No. 52 at pp. 3–4.) The Court agrees. Under Federal Rule of Civil Procedure 36(a)(3), "[a] matter is admitted unless . . . the party to whom the request is directed [timely] serves on the requesting party a written answer or objection addressed to the matter." Fed. R. Civ. P. 36(a)(3). There is no indication here that All Pro Brace either responded to or objected to MBC's Requests for Admission. As such, MBC's Requests for Admission "are deemed admitted." *See KAM Dev., LLC v. Marco's Franchising, LLC*, 2023 WL 3251216, at *8 (N.D. Ohio May 4, 2023). The factual matters deemed admitted in MBC's Requests for Admission are properly considered in evaluating MBC's Motion for Summary Judgment. *Shell v. Lautenschlager*, 2017 WL 4919206, at *4 (N.D. Ohio Oct. 31, 2017) ("Matters that are deemed admitted because of a party's failure to respond to a request for admissions can form the basis for a grant of summary judgment.").

13

§ 414.412(g)(3)(i)")). There is also no dispute that when CMS forfeited the Bonds, it demanded that MBC as surety for the Bonds send to CMS payment equal to the Bonds' penal sum. (Baker Aff. at ¶¶ 6, 7.) MBC then requested the Indemnitors to provide collateral to satisfy CMS' claims against the Bonds. (*Id.* at ¶ 9.) It is further undisputed that after the Indemnitors failed to act, MBC, as required by Section 414.412(g)(3)(i) and pursuant to CMS' demand, made three payments of $50,000.00 each to CMS to satisfy CMS' claims against the Bonds. (*Id.* at ¶ 10.)

The chain of events leading up to MBC's payments to CMS is readily traceable back to the Bonds. The evidence demonstrates that MBC's payments to CMS were related to MBC's role as surety over the Bonds. Section 414.412(g)(3)(i) confirms that CMS' collection of the Bonds from the bonding company, here, MBC, is not only possible, but expected should CMS forfeit the Bonds. 42 C.F.R. § 414.412(g)(3)(i). In this case, CMS forfeited the Bonds and collected payment from MBC. There are no genuine issues of material fact as to whether MBC's $150,000.00 payment to CMS in satisfaction of CMS' claims on the Bonds and as contemplated by the statute was made "in connection with" the Bonds. Therefore, the Indemnity Agreement expressly applies to MBC's $150,000.00 loss in the form of its payments to CMS, as well as any attorney's fees and costs in accordance therewith. Accordingly, the Indemnity Agreement requires the Indemnitors to indemnify MBC for its losses.[11]

---

[11] As noted *supra*, MBC also asserted a claim against All Pro Brace for Common Law Indemnification. MBC failed to address this claim in its Motion for Summary Judgment, however, and has therefore abandoned it. Assuming *arguendo* that MBC had not abandoned this claim, the Court would find that MBC is not entitled to common law indemnification. In Ohio, common law indemnification is commonly known as an "indemnity arising from an implied contract." *Richards v. Gold Circle Stores, Div. of Federated Dep't Stores, Inc.*, 501 N.E.2d 670, 672 (Ohio App. 10th Dist. 1986). Indemnification by express contract is a remedy exclusive of implied indemnification. *Wente Constr. Co. v. Ins. Co. of N. Am.*, 1985 WL 7755, at *2 (Ohio App. 12th Dist. Sept. 30, 1985). In other words, "[w]here an express agreement exists, there can be no implied agreement." *TruLogic, Inc. v. Gen. Elec. Co.*, 177 N.E.3d 615, 618 (Ohio App. 2d Dist. 2021). This is rooted in the doctrine that a contract "will not be implied when the parties have entered into an express contract on the same subject matter." *Esemtre Corp. v. Pizzuti Props.*, 2015 Ohio Misc. LEXIS 8600, at *27 (Franklin Cnty. Ct. Common Pleas May 22, 2015). In this case, the Court has already concluded that the Indemnity Agreement

B. **MBC's Damages**

Because the Indemnitors must indemnify MBC for its losses, the last issue for resolution is the amount of damages owed.

MBC has presented evidence that it issued to CMS three payments of $50,000.00 each to satisfy CMS's claims against the forfeited Bonds. (Baker Aff. at ¶ 9.) MBC has also presented evidence that the Indemnitors' failure to place $150,000.00 in collateral with MBC caused MBC to incur additional losses when it made the payments. (*Id.* at ¶ 11.) Specifically, MBC contends that, as of October 27, 2023, it has incurred $16,528.90 in attorney's fees and costs.[12] (Doc. No. 58 at pp. 2–3.) MBC indicates that it received a payment from Robert Sammon's bankruptcy estate in the amount of $5,485.50, reducing its total revised damages claim to $161,043.40, i.e., $150,000.00 for losses incurred plus $16,528.90 for attorney's fees and costs, minus $5,485.50. (*Id.* at p. 3; Doc. No. 58-3 at p. 2.)

Therefore, in total, MBC asserts that it has incurred $161,043.40 in losses related to the Bonds for which the Indemnitors must indemnify MBC. (Doc. No. 58 at p. 3; Baker Aff. at ¶ 11.)

The Indemnity Agreement provides:

> The undersigned . . . agrees that vouchers or other evidence of payments made by [MBC] under its obligation of suretyship shall be conclusive evidence against the

---

governs the liability of the Indemnitors to MBC. There is no genuine issue of material fact concerning whether an express contract—the Indemnity Agreement—exists between MBC and the Indemnitors, or whether the Indemnitors have an obligation to indemnify MBC for losses incurred in connection with the Bonds. MBC's right to indemnity is therefore determined solely under the terms of the Indemnity Agreement. *Esemtre Corp.*, 2015 Ohio Misc. LEXIS 8600, at *29. The Court cannot recognize an express agreement and an implied contract "for the same thing at the same time." *See Zwegat v. Bd. of Trs.*, 2019 Ohio Misc. LEXIS 323, at *12 (Franklin Cnty. Ct. Common Pleas, Oct. 21, 2019).

[12] MBC initially asserted in its Motion that it incurred $15,648.90 in attorney's fees and costs and was seeking a total of $165,648.90 in damages. (Doc. No. 52 at p. 7.) On October 16, 2023, the Court ordered MBC to provide documentation supporting its calculation for attorney's fees, "including detailed time sheets and hourly rates, as well as an explanation as to why it believes the number of hours billed and hourly rates would be reasonable." (Non-Document Order, Oct. 16, 2023.) On October 27, 2023, MBC submitted a Supplemental Memorandum In Support of MBC's Motion for Summary Judgment, in which MBC revised its attorney's fees and costs claim to $16,528.90. (Doc. No. 58 at pp. 2–3.)

>undersigned of the fact and extent of the undersigned's liability to [MBC] under said obligation of the undersigned, whether said payments were made to discharge a penalty thereunder, incurred in the investigation of a claim made thereon or adjusting a loss or claim in connection therewith, or in completing the work thereby, and whether voluntarily made or paid after suit and judgment against [MBC].

(Doc. No. 52-2 at p. 2.)

Under its plain and ordinary meaning, this provision of the Indemnity Agreement indicates that evidence of MBC's payments as All Pro Brace's surety are conclusive evidence of the "extent" of All Pro Brace's liability to MBC. (*Id.*) There is no dispute that MBC issued three payments totaling $150,000.00 to CMS to satisfy CMS' claims against the Bonds. (Baker Aff. at ¶ 10; Doc. No. 52-4 at pp. 22–24.) Nor is there any dispute that the Indemnitors have failed to reimburse MBC. (Baker Aff. at ¶ 9.) The Court therefore finds that MBC's payments to CMS constitute conclusive evidence that the Indemnitors are obligated to indemnify MBC for direct losses incurred in connection with the Bonds in the amount of $150,000.00.

As to attorney's fees and other costs, the Indemnity Agreement allows for indemnification in the form of attorney's fees where the attorney's fees are incurred in connection with the Bonds. The only question, therefore, is whether the requested attorney's fees are reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "'The most useful starting point for determining the amount of a reasonable fee' is the lodestar method." *Thomas v. GC Rests., LLC*, 2021 WL 4147818, at *3 (S.D. Ohio Sept. 13, 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (alteration omitted). "That figure is reached 'by multiplying the reasonable number of hours billed by a reasonable billing rate.'" *Id.* (quoting *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002)). District courts have "broad discretion" when determining what constitutes a reasonable hourly rate for an attorney. *Dowling v. Litton Loan Serv. LP*, 320 F. App'x 442, 447 (6th Cir. 2009). In determining a reasonable

rate, a court may consider awards in analogous cases, see *Johnson v. Conn. Gen. Life. Ins. Co.*, 2008 WL 697639 at *5 (N.D. Ohio Mar. 13, 2008), as well as the court's own knowledge and experience in awarding attorney fees, see *Ousley v. Gen. Motors Ret. Program for Salaried Emps.*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006).

MBC requests $16,528.90 in attorney's fees and costs. (Doc. No. 58-2 at p. 2.) To support its claim for attorney's fees, MBC provides timesheets containing billing records for its counsel from the law firms of Lipson Neilson, PC, and Bryan & Brewer, LLC, as well as another affidavit by Ms. Baker. (Doc. No. 58-1.) A review of these documents shows that MBC's counsel performed a total of 82.61 hours of work in this matter at an hourly rate of $200 per hour, for a total of $16,522.00 in fees. (*Id.*)

After careful review of MBC's supporting documentation and counsel's billing records, and in the absence of any opposition, the Court concludes that MBC's requested attorney's fees are reasonable. MBC's requested hourly rate of $200.00 is reasonable for this case and is below what other courts in this District have found reasonable in actions involving breaches of contract. *See, e.g.*, *H.T. Hackney Co. v. NZR Retail of Toledo, Inc.*, 2021 WL 4502731, at *2 (N.D. Ohio Oct. 1, 2021) ($210 per hour); *Thirty Eight St., Inc. v. Chatur Corp.*, 2010 WL 2991510, at *4 (N.D. Ohio July 27, 2010) ($300 per hour reasonable where non-movant did not challenge attorney's fees award). Additionally, MBC's counsel has expended 82.61 hours over the course of the 30 months that this case has been pending. MBC not only had to prosecute its own claims, but it also needed to defend itself from All Pro Brace's initial lawsuit in April 2021. The Court finds that the hours billed in this matter are reasonable. MBC's request for $16,522.00 in attorney's fees for 82.61 hours of work billed at $200.00 an hour is therefore reasonable for this case.

MBC also claims $6.90 in photocopy costs for 69 copies at a rate of $0.10 per copy. (Doc. No. 58-1 at pp. 8, 10.) The Court concludes that this is reasonable.

Therefore, MBC is entitled to a reasonable attorney's fees and costs award in the total amount of $16,528.90. Combined with its $150,000.00 in payments made to CMS and less the $5,485.50 payment from Robert Sammon's bankruptcy estate, MBC is entitled to a total indemnity in the amount of $161,043.40.

In sum, the Court concludes that MBC has presented sufficient evidence demonstrating that no genuine issue of material fact exists as to the unambiguous terms of the Indemnity Agreement, that MBC has sustained losses in connection with the Bonds, and that the Indemnitors have failed to uphold their obligations and indemnify MBC, thereby breaching the Indemnity Agreement. The Court also concludes that MBC has incurred $150,000.00 in direct losses in connection with MBC's acting as surety for the Bonds, and $16,528.90 in attorney's fees and costs related to MBC's execution of the Bonds. Therefore, MBC has met its burden of demonstrating that there is no genuine dispute of material fact on its claims for Contractual Indemnification. Accordingly, MBC's Motion for Summary Judgment on Count I of its Counterclaim against All Pro Brace (Doc. No. 17) and its Third-Party Complaint against the Volls (Doc. No. 18) is **GRANTED**.

| V. | **Conclusion** |
|----|---|

For the reasons set forth above, MBC's Motion for Summary Judgment (Doc. No. 52) is hereby **GRANTED**. All Pro Brace and the Volls are hereby ORDERED to indemnify MBC in the amount of $161,043.40.

**IT IS SO ORDERED.**

|  | *s/Pamela A. Barker* |
|---|---|
| Date: October 31, 2023 | PAMELA A. BARKER <br> U. S. DISTRICT JUDGE |